UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-0564 JGB (SHKx)** | Date | July 9, 2025 |
|---|---|---|---|
| Title | *Luther Hill v. Hogan Personnel, LLC et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiff's Motion to Remand (Dkt. No. 10); and (2) VACATING the July 14, 2025 Hearing (IN CHAMBERS)

Before the Court is Plaintiff Luther Hill's ("Hill" or "Plaintiff") motion to remand. ("Motion," Dkt. No. 10.)  The Court determines this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **DENIES** the Motion.  The Court **VACATES** the July 14, 2025 hearing.

## I.   BACKGROUND

On January 29, 2025, Plaintiff, individually and on behalf of similarly situated individuals, filed a putative class action complaint in the Superior Court of the County of San Bernardino against Defendants Hogan Personnel, LLC ("Hogan Personnel"), Hogan Truck Leasing, Inc. ("Hogan Truck") (collectively, "Defendants"), and Does 1-50, inclusive.  ("Complaint," Dkt. No. 1-1.)  The Complaint alleges the following eight causes of action: (1) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq.; (2) failure to pay minimum wages in violation of Cal. Lab. Code §§ 1194, 1197 and 1197.1; (3) failure to pay overtime fees in violation of Cal. Lab. Code § 510, et seq.; (4) failure to provide meal periods in violation of Cal. Lab. Code §§ 226.7 and 512 and the applicable IWC Wage Order; (5) failure to provide required rest periods in violation of Cal. Lab. Code §§ 226.7 and 512 and the applicable IWC Wage Order; (6) failure to provide accurate itemized wage statements in violation of Cal. Lab. Code § 226; (7) failure to provide wages when due in violation of Cal. Lab. Code §§ 201-203; and (8) failure to reimburse employees for required expenses in violation of Cal. Lab. Code § 2802.

On March 3, 2025, Defendants removed the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), and 28 U.S.C. §§ 1441 and 1446. ("NOR," Dkt. No. 1.) In support of its NOR, Defendants filed the declaration of Andrew Krueger. ("Krueger Decl.," Dkt. No. 1-5.)

On March 10, Defendants answered the Complaint. ("Answer," Dkt. No. 7.)

On April 2, 2025, Plaintiff filed the Motion. (Motion.) On April 14, 2025, Defendants opposed. ("Opposition," Dkt. No. 12.) In support of the Opposition, Defendants filed the supplemental declaration of Andrew Krueger ("Supp. Krueger Decl.," Dkt. No. 12-1) and the declaration of Alexander Polishuk ("Polishuk Decl.," Dkt. No. 12-2). Plaintiff replied on April 28, 2025. ("Reply," Dkt. No. 15.)

## II.   FACTS

Plaintiff worked as an hourly, non-exempt employee of Defendants from approximately February 2023 through May 2024. (Complaint ¶ 5.) Plaintiff brings this action on behalf of himself and a proposed class defined as follows:

> All persons who are or previously were employed by Defendant Hogan Personnel and/or Defendant Hogan Truck in California and classified as non-exempt employees (the "California Class") at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court (the "Class Period").

(Id. ¶ 55.)

The Complaint alleges that Defendants maintained a uniform policy and practice of failing to: pay for all hours worked (including minimum, regular, overtime, and double time wages); provide legally compliant meal and rest periods; timely pay all final wages upon termination; furnish accurate itemized wage statements; and indemnify for business expenditures. (Id. ¶¶ 17, 45-48, 87, 132, 135.)

## III.   LEGAL STANDARD

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs." Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 1197 (quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a

preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id.

Where a plaintiff makes a factual attack in the context of CAFA jurisdictional requirements, defendants are required to support their jurisdictional allegations with proof typically considered at summary judgment. A factual attack "contests the truth of the . . . allegations" themselves. Id. (citation omitted). "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." Id. (quoting Ibarra, 775 F.3d at 1197). A factual attack "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." Harris, 980 F.3d at 700 (citing Ibarra, 775 F.3 at 1199 (finding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence").

A defendant is required to file a notice of removal that includes only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 88 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." Sanchez v. Monumental Life. Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." Ibarra, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Id.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." Id. at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." Id.

Under certain circumstances, attorneys' fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." Fritsch v. Swift Transp. Co. of Ariz., 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). However, "a court's calculation of future attorneys'

fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." Id. at 796.

### IV. DISCUSSION

Plaintiff argues that remand is warranted because Defendants failed to prove by a preponderance of the evidence that the amount in controversy for the putative class exceeds the $5,000,000 CAFA jurisdictional minimum. (See Motion.)

In its NOR, Defendants assert that the amount in controversy ("AIC") requirement under CAFA is satisfied because Plaintiff's claims lead to an aggregate AIC of $6,050,303.66. (NOR ¶ 73.) Because the Complaint does not state the amount of damages sought[1], Defendants must prove that the AIC exceeds $5 million. See Ibarra, 775 F.3d at 1197. "[T]he Court must decide, based upon evidence submitted, whether the amount in controversy requirement has been satisfied by a preponderance of the evidence." Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *3 (C.D. Cal. June 22, 2017). "[A] defendant may establish the amount in controversy by relying on admissible statistical evidence taken from a representative sample and extrapolated to calculate the potential liability for the full class." Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, at *2 (C.D. Cal. July 28, 2015) (citing LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202–09 (9th Cir. 2015)). However, a defendant is "not required to comb through the records to identify and calculate the exact frequency of violations." Salcido v. Evolution Fresh, Inc., 2016 WL 79381, at *6 (C.D. Cal. Jan. 6, 2016). "Defendant has no obligation . . . to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." Ray v. Wells Fargo Bank, N.A., 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011). Where "a defendant must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." Id.

To calculate the AIC for the purposes of the NOR, Defendants rely on the Krueger Declaration. (See NOR; Krueger Decl.) Krueger, Defendants' General Counsel, declares that he reviewed data and records, relating to Defendants' non-exempt employees in California from January 3, 2021 to February 24, 2025, maintained in the ordinary course of Defendants' business, to determine the following:

---

[1] Plaintiff pleads in his Complaint that "[t]he amount in controversy for the aggregate claim of the CALIFORNIA CLASS members is under five million dollars ($5,000,000.00)." (Complaint ¶ 7.) The Supreme Court has held that when "a class-action plaintiff . . . stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total," the district court should "ignore[ ] that stipulation" when assessing the amount in controversy. Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 590-596 (2013). A putative class representative cannot bind the absent class before class certification. Id. at 595–96; see also Arias v. Residence Inn by Marriott, 936 F.3d 920, 929 (9th Cir. 2019). Accordingly, the Court disregards Plaintiff's allegation that the AIC is less than five million dollars.

- There were approximately 381 putative class members ("Removal Putative Class Member(s)") employed between January 3, 2021 to February 24, 2025 ("Relevant Class Period") as hourly, non-exempt employees.
- During the Relevant Class Period, over 95% of Removal Putative Class Members were employed on a full-time basis (at least 8 hours per day/40 hours per week).
- The Removal Putative Class Members' hourly rates range from $15.00 to $39.25, with an average hourly rate of $22.91. To calculate this number, Krueger added together the hourly rates of pay for each Removal Putative Class Member for each calendar year during the Relevant Class Period and divided that sum by 381 (the number of Removal Putative Class Members).
- Removal Putative Class Members were collectively employed for a total of approximately 25,122 workweeks during the Relevant Class Period.
- There are 314 Removal Putative Class Members whose employment terminated during the approximate three-year statutory period, from January 3, 2022 to February 24, 2025. The average hourly rate for these employees was $23.33.
- During the Relevant Class Period, Removal Putative Class Members were paid on a weekly schedule.
- There were approximately 134 Removal Putative Class Members employed during the one-year statutory period for wage statement and sick pay claims.

(Krueger Decl. ¶¶ 6-12; Supp. Krueger Decl. ¶ 4.)

Using these figures, Defendants made the following calculations, totaling $6,050,303.66 in controversy:

(1) **Unpaid overtime/minimum wages:** estimating an average overtime rate of $34.36 per hour ($22.91 average hourly rate x 1.5 overtime rate), and assuming one unpaid hour of work per week, Defendants calculate **$863,191.92** in controversy ($34.36 x 1 hour x 25,122 workweeks);

(2) **Liquidated damages**: **$386,878.80** in controversy (25,122 workweeks x 1 hour x $15.40[2] pursuant to Labor Code section 1194.3);

(3) **Meal and rest period premiums:** assuming one meal period violation and one rest period violation per workweek, Defendants calculate **$1,151,090.41** in controversy (2 total violations per week x $22.91 x 25,122 workweeks);

(4) **Wage statement penalties:** assuming the maximum aggregate penalty of $4,000 under Cal. Lab. Code § 226(e), and applying the one-year statute of limitations, Defendants calculate **$536,000.00** in controversy (134 employees x $4,000);

---

[2] Defendants argue $15.40 is the weighted average of California minimum wage rates between 2021 and 2025 for companies with more than 25 employees. This average does not factor in the minimum wage in local jurisdictions, such as Los Angeles, which would make the average even higher. (NOR at 10 n. 5.)

(5) **Business expenses:** assuming $25 per month for each employee for alleged cell phone expenses, and disregarding the alleged "work tools" expenses, Defendants calculate **$144,933.00** in controversy for unreimbursed business-expenses ((25,122 workweeks/52 weeks in a year) x ($25 per month x 12 months in a year));

(6) **Waiting time penalties:** accepting the statutory maximum waiting time penalty of 30 days for employees not paid out at the time of termination, and assuming a 100% violation rate for those terminated employees, Defendants calculate **$1,758,148.80** in controversy ($23.33 x 8 hours/day x 30 days x 314 former employees);

(7) **Attorneys' fees:** assuming 25% in attorneys' fees, Defendants calculate **$1,210,060.73** in controversy ($4,840,242.93 in total damages x 0.25).

NOR ¶¶ 39, 49, 53-54, 61, 65, 73.

Plaintiff argues that "Defendant relies on unsubstantiated assumptions in a single declaration that fails to put forth any competent evidence regarding the class." (Motion at 4.) Plaintiff further asserts that: (1) the assumption of one unpaid hour of work per week for each employee is unreasonable; (2) Plaintiff's Complaint does not seek liquidated damages; (3) the assumption of one meal and one rest break violation is unsupported; (4) the assumption of a 100% violation rate and the application of the maximum penalty of $4,000 per Removal Putative Class Member for wage statement penalties is unreasonable; (5) Plaintiff's Complaint does not allege that every Removal Putative Class Member was required to use their personal cell phone; (6) the assumption of a 100% violation rate for waiting time penalties is unreasonable; and (7) the attorney fee calculation is unreliable as it is based upon the previous calculations. (See generally Motion.)

A. **Krueger Declaration**

The Court finds that the Krueger Declaration and its supplement are sufficient to establish employee headcount, termination data, full-time status, and compensation data for the Relevant Class Period. Declarations can serve as the "summary-judgment-type evidence" required at this stage, see Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004), and Plaintiff has not convincingly argued that the figures Krueger has come to are not reasonable, see Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *4-5 (E.D. Cal. May 1, 2007) ("There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages . . . at this premature (pre-certification) stage of the litigation.").

B. **Minimum Wage and Overtime Violations**

The Court finds that Defendants established by a preponderance of the evidence that Plaintiff's minimum wage and overtime violations claim places $863,191.92 in controversy. Plaintiff repeatedly alleges that Defendants maintained "uniform policies and practices" (Complaint ¶ 13) that resulted in minimum wage and overtime violations, including: (i)

Defendants "maintained a uniform wage practice" of paying Plaintiff and the putative class "without regard to the correct amount of time they work" (id. ¶ 87); (ii) Defendants "had in place an unlawful rounding policy and practice" that "resulted" in Plaintiff and the putative class being "undercompensated" (id. ¶ 47); (iii) Defendants failed to include bonus compensation in calculating the regular rate of pay, resulting in "a systematic underpayment of overtime and double time compensation" (id. ¶ 40); (iv) Defendants' "policies and practices deprived [Plaintiff] and the other [putative class] members of all minimum regular, overtime, and double time wages owed for off-the-clock activities" (id. ¶ 34); and (v) Defendants "failed to document, track, or pay [Plaintiff] and the other [putative class] members . . . all wages earned and owed for all the work they performed" (id. ¶ 32). Assuming these violations to be true, it is reasonable for Defendants to assume that this conduct would amount to an hour of unpaid time each week. See, e.g., Marin v. Loews Hollywood Hotel, 2024 WL 4766204, at *4 (C.D. Cal. Oct. 16, 2024) (finding an estimate of hour of unpaid time each week reasonable); Cabrera v. S. Valley Almond Co., LLC, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) ("the [c]ourt finds that AgReserves's assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly since the Complaint alleges that the Labor Code violations at issue in this case are due to "policies and/or practices" on the part of Defendants").

### C. Liquidated Damages

Regarding Plaintiff's argument that he "does not seek liquidated damages" under California Labor Code Section 1194.2 for unpaid minimum wages, the Ninth Circuit has repeatedly held that "the amount in controversy is determined by the complaint operative at the time of removal and encompasses *all relief a court may grant on that complaint* if the plaintiff is victorious." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 415 (9th Cir. 2018) (emphasis added); see also Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) ("the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.") (emphasis in original). Plaintiff alleges unpaid minimum wages under Labor Code Section 1194, for which Labor Code Section 1194.2 provides that "an employee *shall be entitled* to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Plaintiff's Prayer for Relief in the Complaint further seeks "[s]uch other and further relief as the Court deems just and equitable." (Complaint at 36, ¶ 3(b).) Accordingly, the Court shall consider the liquidated damages available to Plaintiff in the amount in controversy analysis. The Court finds that the calculation of $15.40 average minimum wage, times one hour, times 25,122 workweeks, for a total of $386,878.80 in liquidated damages is reasonable.

### D. Meal and Rest Period Claims

Defendants calculate that $1,151,090.41 has been placed in controversy, approximately $575,545.20 for meal period violations and $575,545.20 for rest period violations. (NOR ¶ 49.) While Plaintiff has alleged that Defendants had a "uniform policy and practice" of not providing meal or rest breaks throughout the Class Period, (Complaint at ¶¶ 45, 48.) Defendants assume a violation rate of only 20%, with one meal and one rest break violation a week. (NOR ¶ 49.) The

Court finds this assumption reasonable. See, e.g., Arreola v. Finish Line, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading a "regular or consistent practice" supports the assumption that every class member "experienced at least one violation . . . per week"); Garza v. Brinderson Constructors, Inc., 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) ("plaintiff does not allege that class members were 'never' permitted breaks, but plaintiff does allege that he 'regularly' missed meal breaks and that defendants maintained a 'policy or practice' of both meal and rest break violations. . . [defendant's] assumption of one violation per week is reasonable based on the allegations of the SAC.").

**E. Wage Statement Violations**

The Court finds that Defendants' assumptions and calculations underlying Plaintiff's wage statement violations claim are reasonable; by a preponderance of the evidence, this claim places $536,000.00 in controversy. Plaintiff contends that it is unreasonable for Defendants to assume that each putative class member would have received an inaccurate wage statement frequently enough to reach the statutory maximum of $4,000, arguing that the Complaint alleges the violations only occurred "from time to time." (Motion at 15.) However, Plaintiff also consistently pleads that Defendants, "*as a matter of company policy, practice, and procedure*, intentionally, knowingly, and *systematically* failed… to issue to [Plaintiff] *and* [Removal Putative Class Members] with accurate itemized wage statements." (Complaint ¶ 17 (emphasis added).) Accordingly, the assumption of a 100% violation rate reasonable. See, e.g., Marin, 2024 WL 4766204, at *4 ("Regarding wage statement violation . . . Plaintiffs allege a uniform illegal practice . . . Such an allegation makes the assumption of a 100% violation rate reasonable"); Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for [d]efendants to assume a 100% violation rate—especially since [p]laintiffs offer no alternative rate to challenge [d]efendant's calculations."); Muniz, 2007 WL 1302504, at *4 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100% . . . [and as] [p]laintiff is the master of [her] claim[s] . . . if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (internal citations and quotations omitted).

Further, Plaintiff bases his inaccurate wage statement claim on his underlying claims of unpaid minimum and overtime wages, missed meal and rest periods, and unreimbursed business expenses, so if even *one* alleged violation occurred, then the wage statements would consequently be inaccurate. As another court in this District noted:

> Plaintiff relies on the "at times" language peppered throughout the Complaint, including alongside allegations of intentional policies of violation . . . [b]ut with regards to the wage statement violations, this argument is particularly untenable because Plaintiff also consistently alleges policies that resulted in the several kinds of violations underlying Plaintiff's claims. It is therefore not unreasonable to

assume that at least one of these violations resulted in an inaccurate wage statement each pay period.

Thompson v. La Petite Acad., Inc., 2022 WL 5241838, at *4 (C.D. Cal. Oct. 6, 2022). Accordingly, the Court finds reasonable Defendants' assumption of a 100% violation rate for inaccurate wage statements and the resulting application of the statutory maximum penalty.

**F.  Business Expenses**

The Court does not agree with Plaintiff's contention that it is improper to assume that every Removal Putative Class Member were required to use their personal cell phones for business purposes.  (See Motion at 11.)  Plaintiff alleges that Defendants' "***uniform policy, practice, and procedure*** was to not reimburse [Plaintiff] and the [putative class] members for expenses resulting from using their personal cellular phones, and purchase of their work tools, within the course and scope of their employment."  (Complaint at ¶ 135 (emphasis added).)  The Complaint does not allege subclasses (or otherwise draw relevant distinctions between different members of the putative class).  (See Complaint.)  Furthermore, Plaintiff does not contest the reasonableness of Defendants' use of $25 per month in its calculation for unreimbursed personal cell phone expenses.  District courts in California have consistently upheld similar assumptions as reasonable.  See e.g., Gurzenski v. Delta Air Lines, Inc., 2021 WL 5299240, at *4 (C.D. Cal. Nov. 12, 2021) (finding an assumption of 50% of an assumed monthly cell phone bill of $76, i.e. $38 per month, reasonable for purposes of CAFA jurisdiction); see also Anderson v. Starbucks Corp., 2020 WL 7779015, at *3-4 (N.D. Cal. 2020) (finding alternative assumptions of $50 per month or $32.50 per month plus the cost of a phone reasonable under CAFA); see also Vallejo v. Sterigenics U.S., LLC, 2021 WL 2685348, at *6 (S.D. Cal. 2021) (finding assumption of $25 per month for cell phone reimbursement reasonable under CAFA).  Moreover, Defendants do not calculate the alleged business expenses incurred from the purchase of "work tools," so the amount in controversy is likely higher.  As such, the Court finds that Defendants have established, by a preponderance of the evidence, that Plaintiff's business expenses claim places $144,933.00 in controversy.

**G.  Waiting Time Penalties**

Defendants' assumptions and calculations regarding Plaintiff's waiting time penalties claim are reasonable and establish by a preponderance of the evidence at least $1,758,148.80 in controversy.

Pursuant to California law, a discharged employee is generally entitled to receive all wages owed to them immediately upon termination or within 72 hours of resignation.  See Cal. Lab. Code § 201(a)-(b).  If the employer does not pay wages due immediately, then the employee is entitled to recover waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to 30 days.  Cal. Lab. Code § 203(a).

Waiting time claims are derivative of other claims. Accordingly, if any putative class member was not paid for all hours worked at any time during their employment, or if the employee experienced a rest break or meal period violation, and if Defendants failed to remedy those violations immediately upon the termination or resignation of the employee, then the putative class member is entitled to receive up to 30 days' worth of pay. See Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc., 2023 WL 5246264, at *4 (C.D. Cal. Aug. 14, 2023).

Plaintiff argues that it is unreasonable for Defendants to assume a 100% violation rate of waiting time penalties for each Removal Putative Class Member. (Motion at 12.) However, "[t]o the extent that [Plaintiff] seeks to skirt the amount in controversy by arguing that Defendants committed infrequent or ad hoc violations, the Court is unpersuaded—if [Plaintiff] does not believe that the alleged violations were widespread or regular, then this action is not appropriate for class-wide relief, and [Plaintiff] should not have asserted his claims on behalf of a putative class." See Valero v. MKS Instruments, 2025 WL 72171, at *3 (C.D. Cal. Jan. 8, 2025).

To be entitled to recover waiting time penalties, each Removal Putative Class Member need suffer only *one* of the other injuries alleged in the Complaint. And for a putative class member to recover 30 days' worth of his or her salary, the injury need only have lasted for more than 30 days—which is necessarily true if, as Plaintiff alleges, the Labor Code violations remain ongoing. (See Complaint ¶¶ 28, 37, 71, 94, 110.) Put differently, the 100% violation rate is not only reasonable—it is a necessary condition of Plaintiff's decision to file this putative class action case. See Demaria v. Big Lots Stores - PNS, LLC, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) ("Based on Defendants' assumptions regarding the minimum wage and meal and rest break violations, which the Court has found to be reasonable, it is also reasonable to assume all or nearly all employees in the class would be entitled to recovery of waiting time penalties."); Noriesta v. Konica Minolta Bus. Solutions U.S.A., 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (holding that if "Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced [waiting time] violations"); Lopez v. Aerotek, Inc., 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding that a defendant "properly used a chain of reasoning based on the Complaint to conclude that the amount-in-controversy requirement is met in this case" and the plaintiff "does not assert or suggest an alternative violation rate on which the Court should rely" "although [they were] afforded the opportunity to do so on this motion"). Accordingly, the Court finds that Defendants' estimates regarding the amount in controversy with respect to waiting time penalties are reasonable.

**H. Attorneys' Fees**

The Ninth Circuit has held that where, as here, the "underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." See Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998). Typically, a "[p]laintiff would recover the benchmark rate of 25 percent of the potential damages in class actions." See Lopez, 2015 WL 2342558, at *3; Valero, 2025 WL 72171, at *5 (finding it reasonable to assume that attorneys' fees equal twenty-five percent of the

amount in controversy); Greene v. Harley-Davidson, Inc., 956 F.3d 767, 774 n.4 (9th Cir. 2020) (same).  Therefore, Defendants have demonstrated by a preponderance of the evidence that at least $1,210,060.73 is in controversy regarding attorneys' fees.

As such, Defendants have established by a preponderance of the evidence that the amount in controversy here exceeds $5,000,000.

## V.     CONCLUSION

For the reasons above, the Court **DENIES** the Motion.  The July 14, 2025 hearing is **VACATED**.  The Court **DENIES AS MOOT** the parties' request to appear remotely at the July 14, 2025 hearing (Dkt. Nos. 15, 18, 23).

**IT IS SO ORDERED.**